**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| *Plaintiff,* | ) | |
| | ) | Civil Action No.1:03-CV-00434 (HHK) |
| v. | ) | |
| SMITHFIELD FOODS, INC., | ) | |
| *Defendant.* | ) | |

# PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Plaintiff, United States, ("Plaintiff") has uncovered two additional sources of information further demonstrating that Defendant Smithfield Foods, Inc. ("Smithfield") exercises control over its wholly-owned subsidiaries, and specifically over those subsidiaries whose products are sold in the District of Columbia – Gwaltney of Smithfield, Ltd. ("Gwaltney") and Smithfield Packing Company, Inc. ("Smithfield Packing"). None of this information was known to Plaintiff at the time that it timely filed its Opposition to Defendant's Motion to Dismiss and the information is directly relevant to the question of whether this Court may exercise personal jurisdiction over Smithfield. First, Plaintiff discovered sworn testimony of Smithfield's Chief Executive Officer ("CEO") describing how he controls Smithfield's subsidiaries. Second, Plaintiff received additional information about Smithfield officers who are also officers of the subsidiaries.

## I. Statements by Smithfield's Chairman and CEO Showing Capacity to Control

In the context of a lawsuit brought by the United States on behalf of the Environmental Protection Agency against Smithfield Foods for violations of the Clean Water Act ("EPA lawsuit"), Smithfield's then-President and Chief Executive Officer, Joseph W. Luter, III, testified under oath on May 19, 1997 about his control over two of Smithfield's subsidiaries – Gwaltney and Smithfield Packing. Although the focus of the deposition was Mr. Luter's role in the two subsidiaries' compliance (or non-compliance) with the Clean Water Act, his testimony makes it clear that Smithfield's subsidiaries are under his control. Attached as Exhibit 1 is a copy of the entire transcript. Highlights of Mr. Luter's testimony on the relevant issue of Smithfield's control over its subsidiaries are below.

When asked who runs Smithfield, Mr. Luter responded that he did. Exhibit 1 at 25:23-24. He admitted that Smithfield has a Board of Directors but he was not sure how many members it had. *Id.* at 25:25-26:4. He then testified that each of the subsidiaries has a Board of Directors. *Id.* at 26:11-12. When asked if there were common members between the Board of Directors for Smithfield Foods and the Board of Directors for Smithfield Packing, Mr. Luter responded that there were, but he did not know how many. *Id.* at 26:13-18. He then testified that

> The Board of Directors of subsidiary companies are there for housekeeping matters rather than to make policy. All the policy is made by the management of Smithfield Foods with the supervision of the Board of Directors.

*Id.* at 26:18-22. Mr. Luter went on to testify that he makes the policy decisions that affect Smithfield Packing's plant and Gwaltney's plant, including environmental compliance issues. *Id.* at 27:2-8.

Mr. Luter testified that the presidents of Gwaltney and Smithfield Packing report to him. *Id.* at 32:8-20. Mr. Luter also testified about his control over spending by the subsidiaries. Until 1996, Mr. Luter approved all capital expenditures above $10,000.00, when this amount was increased to $25,000.00. *Id.* at 57:18-24. Mr. Luter also receives "bottom line" reports from Smithfield Packing and Gwaltney regarding their operations – what he calls "sales per week" reports -not "day-to-day operation" reports, *id.* at 40:8-15, and he reviews "monthly financial statements." *Id.* at 41:8-42:10.

As to his style of management, Mr. Luter testified:

> I mean, I leave it up to the people. I give them responsibilities. I try to make them feel that they are part owner of the business. And they have the authority to run their ends of the business. And I hold those people responsible.

*Id.* at 35:14-19. However, when he gives instructions, he expects them to be followed: "it's not like the government. When I give instructions, those orders are followed." *Id.* at 31:20-22. When asked to explain what he meant by "it's not like the government," he testified

> Well, I'm in control of Smithfield Foods. I mean, you don't have – I mean, I the government, you've got an Executive Branch, you've got the Legislative Branch, you've got the Judicial Branch. And there's no, there's a sharing pile. But in a private corporation, people do what I say, or they are disciplined or discharged. It's that simple.

*Id.*. at 31:20-32:4.

As these statements by Mr. Luter illustrate, he views himself as the ultimate decision maker for the Smithfield organization. If he does not like what subordinates in Smithfield's subsidiaries are doing, "they will be disciplined or discharged." One example of his being the ultimate decision maker comes from his testimony that he told Doug Wilder, then-governor of Virginia, that he would move Smithfield out of state or severely curtail production if Smithfield

didn't get some relief because Smithfield could not meet the [state's environmental] standards. *Id.* at 126:15-127:21. Presumably, Mr. Luter would not make such a statement if he could not make it happen. Another example is Mr. Luter's statement that he would rather pay his lawyers $5 million than pay a $3 million fine, and that he did not need his board's approval "because he makes those decisions." *Id.* at 134:4-10; 136:7-12.

## II. Smithfield Shares Officers and Directors with its Subsidiaries

According to annual reports filed by Smithfield Packing and Gwaltney in June 2001 and July 2002 with the U.S. Department of Agriculture, Mr. Luter, Smithfield's Chairman and CEO was *their* Chairman and CEO as well. *See* Exhibit 2 (2001 Annual Report of Packers by Gwaltney of Smithfield, Ltd, Answer to Section 1, Item 5); Exhibit 4 (2001 Annual Report of Packers by Smithfield Packing Company, Inc., Answer to Section 1, Item 5); and Exhibit 4 (2002 Annual Report of Packers by Gwaltney of Smithfield, Ltd., Answer to Section 1, Item 5). In addition, in 2001, both Smithfield Packing and Gwaltney listed C. Larry Pope, Smithfield's then-Treasurer, as their Chief Financial Officer, and Michael Cole, Smithfield's Secretary, as their Corporate Counsel. *Id.* Given Mr. Luter's testimony in the EPA lawsuit and his position as Chairman and CEO of the two subsidiaries, it is hard to imagine that he does not control the other board members and executives of Gwaltney and Smithfield Packing.[1]

---

[1]Mr. Luter is listed as Chairman and CEO of nine other subsidiaries in the Smithfield family of companies. *See* Exhibits 2 and 3 at Answers to Section 1, Item 8; and Exhibit 4 at Answer to Section 1, Item 8. The subsidiaries listed are the operating subsidiaries that Smithfield typically lists in publicly filed documents, such as its Annual Form 10-K Report filed with the SEC, as the subsidiaries through which it conducts its business. *See, e.g.,* Plaintiff's Exhibits F and G to Plaintiff's Memorandum of Points and Authorities in Support of its Opposition to Defendant's Motion to Dismiss.

## III. CONCLUSION

In light of this additional information showing Smithfield's control over its subsidiaries and for the reasons set forth in Plaintiff's Memorandum of Points and Authorities in Support of its Opposition to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, Plaintiff respectfully reiterates its request that this Court deny Defendant's motion.

Dated this 16th day of April, 2003.

Respectfully submitted,
Plaintiff, United States of America

By [signature]

Nina B. Hale
United States Department of Justice
Antitrust Division
325 Seventh Street, NW, Suite 500
Washington, D.C. 20530
Telephone: 202-307-0892
Facsimile: 202-307-2784